HEYL & PATTERSON, INC., Appellant,

v.

Sean C. O'KEEFE, Acting Secretary of the Navy, Appellee.

Nos. 91–1446, 92–1072.

United States Court of Appeals, Federal Circuit.

Feb. 12, 1993.

Sterling C. Scott, Jenner & Block, Washington, DC, argued, for appellant. With him on the brief, was D. Joe Smith, of counsel.

Lisa B. Donis, Atty., Commercial Litigation Branch, Dept. of Justice, argued, for appellee. With her on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Sharon Y. Eubanks, Asst. Director, and Joan M. Bernott. Also on the brief, were James H. Phillips, Asst. Director, and James H. Haag, Navy Litigation Counsel, Washington, DC, of counsel.

Before RICH, NEWMAN, and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

Heyl & Patterson, Inc. appeals two decisions of the Armed Services Board of Contract Appeals (the Board). In its first decision, dated April 17, 1991, the Board held that it lacked jurisdiction over Heyl & Patterson's November 21, 1989 claim because the claim was not properly certified as required by the Contract Disputes Act (CDA), 41 U.S.C. § 605(c)(1) (1988). *Heyl & Patterson, Inc.*, ASBCA Nos. 40604 & 42589, 91–2 BCA ¶ 23,972, 1991 WL 81514 (1991) (*"Heyl I"*). In its second decision, dated July 31, 1991, the Board held that Heyl & Patterson's earlier submissions dated November 3, 1987, January 28, 1988, and March 23, 1988, were not "claims" within the meaning of the CDA because the amounts asserted were not in dispute at the time the submissions were made. *Heyl & Patterson, Inc.*, ASBCA Nos. 40604 & 42589, 91–3 BCA ¶ 24,233, 1991 WL 170094 (1991) (*"Heyl II"*). We affirm *Heyl II* but reverse and remand *Heyl I* for adjudication on the merits of the November 21, 1989 claim. The language of the November 21,

1989 certification satisfies the substantial compliance test set forth in *United States v. General Elec. Corp.*, 727 F.2d 1567, 1569 (Fed.Cir.1984), and therefore, the certification met the requirements of section 605(c) and the Board does have jurisdiction over the claim. Because the Board's finding that the amounts asserted in the earlier submissions were not in dispute is supported by substantial evidence, the earlier submissions were not claims and were properly dismissed.

## I. BACKGROUND

On November 14, 1984, Heyl & Patterson entered into Contract No. N62472–83–C–1468 with the Navy to design, fabricate and install a derrick at the Norfolk Naval Shipyard. On November 3, 1987, Heyl & Patterson submitted a "Request for Equitable Adjustment" on the contract. The request characterized itself as a "claim," but it was not certified and it did not request a final decision. The cover letter to the request stated: "We understand that your office will review this expeditiously and will advise us in several weeks of your preliminary position.... We are available to discuss this further after you have had an opportunity to study this request."

On January 28, 1988, Heyl & Patterson submitted a letter "addendum" to its "claim," which provided additional details and decreased the amount requested. The letter was not certified and did not request a final decision from the contracting officer. The letter stated: "We request that you review this Addendum as soon as possible after which time we could meet and review all of the items in the claim before we submit a formal request for Equitable Adjustment."

On March 23, 1988, Heyl & Patterson submitted another letter to the contracting officer enclosing copies of its November 3, 1987 and January 28, 1988 submissions, a completed Form 1411, entitled "Contract Pricing Proposal Cover Sheet," and, for the first time, a certification. The letter did not request a final decision, but indicated that Heyl & Patterson was "anxious to

proceed with the settlement." The letter also stated: "If any other information is needed before the Audit can begin, please contact me immediately."

On November 21, 1989, Heyl & Patterson filed a formal, certified claim with the contracting officer. In it, Heyl & Patterson sought $4,342,245 plus interest based upon a breach of contract theory, or in the alternative, $1,751,052 plus interest based upon "constructive changes, overinspections, defective specifications and the delay and disruption that is described in the company's claim." 91–2 BCA ¶ 23,972 at 119,985, 1991 WL 81514. The attached certification stated:

> Heyl & Patterson certifies that all claims identified herein are made in good faith, that *the data are accurate and complete* to the best of our knowledge and belief, and that the amounts requested accurately reflect the contract adjustments for which Heyl & Patterson believes the government is liable.
>
> For claim items previously presented to the government by Heyl & Patterson on November 3, 1987 and January 28, 1988, this certification reaffirms the prior certification of those claim items that were provided to the government by Heyl & Patterson on March 23, 1988.

(Emphasis added.)

On December 26, 1990, the contracting officer issued a final decision on the claim submitted on November 21, 1989. The contracting officer separately analyzed each item of that claim and allowed only a small portion of the total amount requested. The contracting officer also awarded interest on the amount allowed. Although the contracting officer allowed interest from March 23, 1988, his decision did not address the adequacy of the March 23, 1988 "claim" or its certification.

Heyl & Patterson appealed to the Board. On April 17, 1991, the Board issued a decision (*Heyl I*) regarding the November 21, 1989 claim, holding that it lacked jurisdiction because the claim was not properly certified. In particular, the Board held that the certification was defective because it asserted merely that "the data are accu-

rate and complete" and not that "the *supporting* data are accurate and complete," which is the exact language of section 605(c) of the CDA. The Board stated:

> Without the term "supporting," we are left wondering what data it is that is accurate and complete.... Appellant's affirmation leaves open the interpretation that some universe of data, other than the "supporting data," is the universe that is accurate and complete. Perhaps the "supporting data" is neither accurate nor complete, but documentation elsewhere would make it so. The contractor's certification should not leave us with such concerns.

*Heyl I*, 91–2 BCA ¶ 23,972 at 119,986–87, 1991 WL 81514. The Board deferred consideration of the March 23, 1988 claim, giving both Heyl & Patterson and the government time to submit evidence concerning the adequacy of the claim and its certification.

On August 1, 1991, the Board issued a decision (*Heyl II*) regarding the March 23, 1988 "claim" and the submissions dated November 3, 1987 and January 28, 1988. Quoting *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 878 (Fed.Cir.1991), the Board stated that "a claim must seek payment of a sum certain as to which a dispute exists at the time of submission." *Heyl II*, 91–3 BCA ¶ 24,233 at 121,196, 1991 WL 170094. The Board analyzed each of the three submissions and found that the amounts were not in dispute at the time the submissions were made, but rather the parties were negotiating. Accordingly, the Board dismissed the appeals "without prejudice to appellant's submission of a properly certified claim to the contracting officer." *Id.*

Heyl & Patterson appealed both Board decisions to this court. *Heyl I* was assigned appeal number 91–1446. *Heyl II* was assigned appeal number 92–1072. We consolidated the appeals for decision.

We have jurisdiction over the appeals pursuant to 28 U.S.C. § 1295(a)(10) (1988) and 41 U.S.C. § 607(g)(1) (1988). Our review is limited by statute:

[T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b) (1988).

## II. ANALYSIS

■ *A. The Heyl I decision.* The Contract Disputes Act (CDA) provides:

For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that *the supporting data are accurate and complete* to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1) (emphasis added). Except for omitting "supporting," Heyl recited the operative words of this provision verbatim in its November 21, 1989 certification. The government argues, nonetheless, that omission of the word "supporting" renders the certification defective because "the CDA explicitly requires that a certification contain the word 'supporting.'" Although the government does not cite any provision of the CDA in support of its assertion, we presume the government relies on section 605(c)(1). However, section 605(c)(1) contains no such requirement. While section 605(c)(1) explicitly requires that the contractor make three affirmations, it does not explicitly require that the contractor do so in the exact words of the statute, and it certainly does not require the word "supporting." [1]

This court has already considered whether a contractor must use the exact language of section 605(c)(1) in making the required affirmations in *General Electric*, 727 F.2d 1567. The court concluded that the exact language is not required. *Id.* at 1569. In particular, the court reviewed the validity of a certification which failed to use the language of section 605(c)(1) concerning the affirmation that "the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." 41 U.S.C. § 605(c)(1). The court upheld the certification, stating that "substantial compliance" with the statute is all that is required. 727 F.2d at 1569.

This court also decided a closely related issue in *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572 (Fed.Cir.1992). In *Transamerica*, the court considered whether section 605(a), which states that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision," requires, in the court's words, "an explicit request for a contracting officer's final decision." *Id.* at 1576. The court concluded that it does not: "This court will not require contractors to do more than to comply as fully and reasonably as possible with the statutory requirements of the CDA when this court has definitively stated that certain 'magic words' need not be used...." *Id.* at 1578 (citing *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987)). The court held that a request for a final decision can be implied from the context of the submission. *Id.* at 1577 ("[A]ll that need be shown is an 'expression of interest,' which may be made *implicitly*.") (emphasis added); *id.* at 1581 ("The claim, *considered in context*, contained a readily ascertainable request for a contracting officer's final decision.") (emphasis added).

Thus, we must determine whether the November 21, 1989 certification, in the words of *General Electric*, "substantial[ly] compl[ies]" with section 605, 727 F.2d at 1569, or, in the words of *Transamerica*, "compl[ies] as fully and reasonably as pos-

---

**1.** While contractors might be well-advised to use the precise language of the CDA, the government is not well-advised to challenge every deviation, no matter how slight, meaningless, or harmless.

sible with the statutory requirements," 973 F.2d at 1578. We conclude that it does.

As stated above, except for the omission of the word "supporting," the contractor in this case made the three affirmations required by section 605(c)(1) using all the operative words of the section. Because the claim, the certification, and the data were all submitted together, the data to which Heyl & Patterson's certification refers is clear. It is the attached data. Common sense suggests that the contractor considered this data to be "supporting"; otherwise, it would not have been submitted.

Just as the section 605(a) requirement that the contractor request a final decision can be met inferentially, *id.* at 1577, 1581, so too can the section 605(c)(1) requirement that the contractor verify the accuracy and completeness of the supporting data. Especially in this case, where the government admitted that "there is certainly no evidence that Heyl *intentionally* omitted the word 'supporting' from its certification," we see no reason not to infer from the context in which the certification was made that the data to which Heyl & Patterson's certification refers is the attached data. Indeed, to conclude that "data" meant anything else would be nonsensical. There is no indication in the legislative history that Congress intended a hyper-technical construction of this section that wars with common sense.

The government argues nonetheless that omission of the word "supporting" renders the certification fatally defective because "without the word 'supporting' there is simply no way to ascertain exactly what documents or data to which the contractor refers." As noted above, the government's assertion is untrue. In addition, its argument is not persuasive because it implies that the government is entitled to an enumeration of the data or documents supporting the contractor's claim in the certification itself. However, the CDA imposes no such requirement. Moreover, omission of the word "supporting" actually renders the

certification even broader than the statute requires. In other words, the certifier is attesting to the accuracy and completeness of all the data submitted, whether it is supporting or not. A certification that is broader than the statute requires cannot prejudice the government.

During oral argument, the government for the first time raised an alternative theory in support of the Board's rejection of the November 21, 1989 claim. The government argues that because Heyl & Patterson asserted two different amounts in its November 21, 1989 submission, the submission is not a "claim" under the CDA because it does not demand a "sum certain" as required by 48 C.F.R. § 33.201 (1991). The government's argument is not persuasive, but even if it were, we would be without authority to affirm on that basis. *See Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); *Securities and Exchange Comm. v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). *See generally US West Communications Servs., Inc. v. United States,* 940 F.2d 622, 630–31 (Fed.Cir.1991) (applying *Chenery* to the General Services Administration Board of Contract Appeals). The Board decided *Heyl I* on the ground that the November 21, 1989 claim was not properly certified; the Board did not base its action on the alleged inadequacy of the submission as a claim.

The government's argument is, in any event, unpersuasive because although the contractor's claim does demand two different sums, the different sums are clearly alternatives, each based upon a different legal theory but the same factual circumstance. The claim does demand a "sum certain" under each legal theory.[2] Such a

---

**2.** We need not and do not decide in this case whether such a demand is properly character-

ized as two separate claims or as two parts of the same claim.

claim should be contrasted with, for example, one in which the contractor indicates in a single submission that it would accept a specific lower amount if the government refused the higher amount. Such a submission might not demand a sum certain.

Because the November 21, 1989 certification substantially complies with the statute, the Board does have jurisdiction over the claim. *See United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 579 (Fed. Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991) ("It is well settled that the certification requirement is a jurisdictional prerequisite that must be satisfied by the contractor before it may appeal the contracting officer's claim denial."). Accordingly, we reverse *Heyl I* and remand that appeal for adjudication on the merits of the claim.

■ *B.   The Heyl II decision.* The Federal Acquisition Regulation (FAR) defines the term "claim" as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

48 C.F.R. § 33.201. This definition has been interpreted and applied by our court. *See Essex Electro Eng'rs, Inc. v. United States,* 960 F.2d 1576, 1580 (Fed.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992). The FAR also provides:

> A voucher, invoice, or other routine request for payment *that is not in dispute when submitted is not a claim.* The submission may be converted to a claim, by written notice to the contracting officer provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

48 C.F.R. § 33.201 (1991). In *Dawco,* this court held: "Clearly, the FAR mandates that, *inter alia,* a claim must seek payment of a sum certain as to which a dispute exists at the time of submission." *Id.* at 878. *See also Transamerica,* 973 F.2d at 1579 (agreeing with Transamerica's assertion that the CDA requires that the government dispute the contractor's right to additional compensation).

In *Heyl II,* the Board relied upon the holding in *Dawco* to conclude that none of the three earlier submissions (November 3, 1987, January 28, 1988, and March 23, 1988) were claims because the amounts were not in dispute. On appeal, neither Heyl & Patterson nor the government argues that the "dispute requirement" of *Dawco* is improper or that it is inconsistent with the CDA or the FAR. Instead, Heyl & Patterson moved to supplement the record on appeal with three documents that were not considered by the Board. Heyl & Patterson asserts that the documents show that the amounts were disputed at the time the submissions were made. By order dated May 13, 1992, the court denied the motion. Because the documents were not considered by the Board, the government had no opportunity to dispute them—with its own documents, with its own witnesses, or otherwise. Therefore, it would be unfair to admit them on appeal.

Beyond the attempted submission of this new evidence, Heyl & Patterson has made no other arguments to show that the Board's finding, that there was no dispute at the time the earlier submissions were made, cannot stand. And from our review of the record, we cannot say that the Board's finding is "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or ... not supported by substantial evidence." 41 U.S.C. § 609(b).

Each of the three earlier submissions, November 3, 1987, January 28, 1988, and March 23, 1988, suggests in one way or another that Heyl & Patterson and the government were still negotiating. In the November 3, 1987 submission, Heyl & Patterson indicated that it awaited the government's "preliminary position." In the January 28, 1988 submission, Heyl & Patterson indicated that it would submit a "formal request" at a later date. In the March 23, 1988 submission, Heyl & Patterson indicated that it was "anxious to proceed with the settlement." None of the submissions

requested a final decision, explicitly or implicitly. The third submission, though styled a "claim," merely continued the dialogue of the first two. Indeed, as late as the March 23, 1988 submission, Heyl & Patterson inquired whether "any other information [was] needed before the Audit [could] begin." While we agree that "[t]here is no necessary inconsistency between the existence of a valid CDA claim and an expressed desire to continue to mutually work toward a claim's resolution," *Transamerica*, 973 F.2d at 1579, where, as here, "there is no implication that the [appellant] desired a final decision," *id.* at 1577–78, no claim exists under the CDA as implemented by the FAR.

Accordingly, the Board's decision is correct. We affirm *Heyl II.*

AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED–IN–PART.

### COSTS

Each party to bear its own costs.