BANNUM, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–513C.

United States Court of Federal Claims.

July 18, 1995.

Scott T. Wendelsdorf, Louisville, KY, for plaintiff. James G. Campbell and Tracey S. Prewitt, Ogden Newell & Welch, of counsel.

Shalom Brilliant, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. H. Charles Coburn, Bureau of Prisons, U.S. Dept. of Justice, of counsel.

### ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss Counts 1–7 and 10 and 11 of the complaint[1] for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Plaintiff has opposed.[2] The issue to be decided is whether a contractor's correspondence with a federal agency concerning various service contracts constituted valid claims under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988 & Supp. IV 1992) (the "CDA"). Argument is deemed unnecessary.

### FACTS

The following facts are derived from plaintiff's complaint, except where otherwise indicated. The United States Department of Justice Bureau of Prisons (the "Bureau of Prisons") is responsible for managing and regulating all federal correctional facilities. Pursuant to 18 U.S.C. §§ 4042, 4082 (1988), the Bureau of Prisons established a program intended to serve as an alternative to incarceration of federal prisoners. Under this program the Bureau of Prisons provides federal offenders minimal supervision prior to their release from custody through the use of half-way houses, community treatment centers, and/or community correction centers. In order to implement this program the Bu-

---

1. The court previously dismissed counts 12, 13, 15, and 16 for lack of jurisdiction. Plaintiff concedes dismissal as to counts 10 and 11.

2. The Federal Circuit recently reheard en banc its panel decision in *Reflectone, Inc. v. Secretary of the Navy*, No. 93–1373, *reh'g en banc* (Fed.Cir. argued May 2, 1995). This court requested the parties' views as to whether the ruling on defendant's motion should be deferred pending the decision in *Reflectone;* the parties responded in the affirmative. However, because the issue in that case is whether a contractor must communicate a sum certain to the Government prior to presenting a claim, so that a dispute exists as to an amount of money, not merely liability, and because the parties did not suggest to the court that the issue on rehearing has been broadened, the court can resolve defendant's motion without awaiting the decision in *Reflectone*.

reau of Prisons entered into contracts with Bannum, Inc. ("plaintiff"), for housing, providing supervision, and counseling of inmates.

By letters dated September 14, 1987, plaintiff submitted requests for payment to the Bureau of Prisons concerning the so-called "Fort Lauderdale," "1985 Memphis," and "Tucson" contracts. These letters did not specify the amounts requested. By letters dated February 22, 1988, plaintiff responded to the Bureau of Prisons' request for additional information and specified the amounts sought under the three contracts. By letter dated March 24, 1987, plaintiff submitted various invoices related to the so-called "Wilmington" contract. By letter dated December 28, 1987, plaintiff submitted a request for payment under the same contract. On April 6, 1988, plaintiff provided the Bureau of Prisons with additional information and specified the total amount sought under the Wilmington claim. By letter dated June 12, 1989, plaintiff submitted a request for payment with attached invoices concerning the so-called "Jackson" contract.

By letter dated November 14, 1990, plaintiff requested a "speedy resolution" of its outstanding claims. Plaintiff wrote the Bureau of Prisons again on November 18, 1990, requesting specified amounts under the so-called "Richmond" contract. On June 13, 1991, plaintiff wrote in response to the Bureau of Prisons' request for a settlement "demand number" and chronicled the various telephonic and written communications relating to its claims. By letter dated August 27, 1991, plaintiff expressed dissatisfaction with the "lack of progress."

On November 13, 1991, plaintiff requested an equitable adjustment in the per-day rate in response to modification 9 to the so-called "1989 Memphis" contract. The modification required increases in contract staffing levels. By letter dated November 15, 1991, plaintiff submitted a request for a specified amount under the 1989 Memphis contract. On January 29, 1992, plaintiff requested an equitable adjustment in the per-day rate in response to modification 11 to the same contract. Modification 11 also required increases in staffing levels. On February 15, 1992, plaintiff re-

vised the request for payment made on November 15, 1991, again identifying a specific amount, and attached a certification as required by 41 U.S.C. § 605(c).

Plaintiff requested a decision on its Fort Lauderdale, Wilmington, 1985 Memphis, Tucson, Jackson, and Richmond claims by separate letters dated June 16, 1992. The letter concerning the Fort Lauderdale contract attached a certification pursuant to 41 U.S.C. § 605(c). The certification referred to plaintiff's September 14, 1987 letter in which plaintiff failed to specify the amount sought. By letter dated June 19, 1992, plaintiff informed the Bureau of Prisons that "[t]he claim that ... [plaintiff] submitted on February 22, 1988 remains the amount ... [plaintiff] is due pursuant to the ... [Fort Lauderdale] contract." Similar letters, dated June 19, 1992, were submitted concerning the Wilmington, 1985 Memphis, Tucson, Jackson, and Richmond claims, each identifying a previous letter containing the exact amount due under the respective contracts.

By letter also dated June 19, 1992, plaintiff requested a final decision on its request for payment under the 1989 Memphis contract. By letters dated June 25, 1992, plaintiff demanded that the Bureau of Prisons respond to each of plaintiff's previous requests for final decision within the 60 days specified by statute. The Bureau, on June 30, 1992, informed plaintiff that a final decision would be issued by July 31 or August 31, 1992, with respect to plaintiff's claims concerning the 1989 Memphis contract. By letter dated July 14, 1992, plaintiff certified its request for equitable adjustment in the per-day rate as a result of modifications 9 and 11 to the 1989 Memphis contract. In its complaint plaintiff treats the request for payment and the requests for equitable adjustment in the per-day rate under the 1989 Memphis contract as distinct claims. The contracting officer did not render a final decision with respect to any of the claims at issue. Plaintiff thereafter filed this lawsuit.

## DISCUSSION

 In considering a motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed

allegations of fact made by the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Henke v. United States*, 60 F.3d 795, 796 (Fed.Cir.1995); *Catawba Indian Tribe v. United States*, 982 F.2d 1564, 1568–69 (Fed. Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993). The non-moving party bears the burden of establishing jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). The court is not confined to an examination of the complaint, but may take into account "evidentiary matters outside the pleadings." *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

### 1. The Contract Disputes Act's jurisdictional requirement

The Contract Disputes Act, ("CDA"), 41 U.S.C. § 605(a) (1988 & Supp. IV 1992), states that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision...." For claims in excess of $50,000.00, the CDA further requires that the contractor certify that the claim is made in good faith, that the supporting information is accurate and complete, "and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." 41 U.S.C. § 605(c)(1). The CDA does not itself define what constitutes a valid claim. The Federal Acquisition Regulations ("FAR"), however, which implement the CDA, define "claim" as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, ... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.

48 C.F.R. § 33.201 (1994). Referring to similar language contained in the standard disputes clause, the Federal Circuit stated that it "is not ambiguous, and means what it says: A contractor and the government contracting agency must already be *in dispute* over the amount requested." *Dawco Constr. v. United States*, 930 F.2d 872, 878 (Fed.Cir.1991) (emphasis in original).

Case law instructs that courts employ a "common sense analysis" in determining whether a contractor has met the requirements of the CDA. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1579 (Fed.Cir.1992). A valid CDA claim need not adhere to a particular format, nor limit itself to a single document. *Id.* at 1578; *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). Instead, the basic requirement is that the claimant's submissions, when taken together, provide "the contracting officer adequate notice of the basis and amount of the claim." *Transamerica*, 973 F.2d at 1578.

### 2. Plaintiff's submissions

Defendant argues that plaintiff fails to establish the CDA's jurisdictional requirement that the various claims at issue were "in dispute." Defendant further argues that the claims related to the Fort Lauderdale and 1985 Memphis contracts were certified improperly.

#### a. Claims in dispute

In order to satisfy the requirement that the request be in dispute, the contractor must indicate that the request concerns an existing dispute as to which the parties had abandoned negotiations. *Dawco*, 930 F.2d at 879. This requirement is not met where the contractor's submissions "are barren of any indication that ... [the contractor] was discontinuing negotiations ... in favor of seeking a final decision by the contracting officer." *Id.* Correspondence suggesting disagreement during negotiations, while it "may ultimately lead to a dispute," does not satisfy the CDA's "clear requirement that the request be in dispute." *Id.* at 878. A contractor's request for a final decision on a claim, and the contracting officer's rendering of a final decision, or failure to do so within 60 days, signal an end to negotiations. *See id.* at 879; *see also Heyl & Patterson, Inc. v. O'Keefe*, 986 F.2d 480, 485–86 (Fed.Cir.1993) (citing *Transamerica*, 973 F.2d at 1579).

Plaintiff's written communications, when considered together, substantiate that the specific amounts sought with respect to each claim were in dispute. For each claim plaintiff submitted letters requesting payment. Subsequent correspondence identified for each claim the amount, in sum certain, that plaintiff requested. Thereafter followed correspondence seeking "speedy resolution" and expressing disappointment over the "lack of progress." For each of the claims plaintiff requested a final decision and followed that request by reiterating the amount sought for each claim.[3] These communications culminated in plaintiff's informing the Bureau of Prisons that, for each of the claims at issue, the agency was mandated by statute to render a decision within 60 days.

■ Plaintiff's attempts to resolve its various claims span a period of several years. The record is far from "barren of any indication" that plaintiff had abandoned negotiations "in favor of seeking a final decision by the contracting officer." *Dawco*, 930 F.2d at 879. Instead, plaintiff sought a final decision with respect to each of its claims, and the Bureau of Prisons failed to render a decision within the 60 days mandated by statute. This breakdown in communication demonstrates the parties' abandonment of negotiations. *See id.* at 878; *see also O'Keefe*, 986 F.2d at 485–86. The claims were therefore in dispute for purposes of the CDA.[4]

### b. *Certification*

Defendant contends that plaintiff did not satisfy the certification requirements under 41 U.S.C. § 605(c) with respect to the Fort Lauderdale and 1985 Memphis contracts. Section 605(c)(1) provides that, for claims in excess of $50,000.00, the contractor "certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." Defendant notes that the letters purporting to certify the amounts sought under the Fort Lauderdale and 1985 Memphis contracts referred specifically to prior correspondence, dated September 14, 1987, in which plaintiff failed to identify a sum certain. Therefore, defendant proceeds, the amount of the claims referenced in these certifications was too vague to satisfy the CDA requirement that the supporting data be accurate and complete.

■ Defendant is correct that, in order to be properly certified, a claim must request a sum certain. There is no requirement, however, that the certification itself specify the amount sought. Plaintiff requested sums certain for both the Fort Lauderdale and 1985 Memphis claims by letters dated February 22, 1988.[5] Plaintiff certified these claims on June 15, 1992. While the particular letters referenced in the June 1992 certifications did not specify sums certain, the claims referenced in those certifications did. The CDA does not require more. "A defect in the certification of a claim shall not

---

**3.** Defendant argues that plaintiff did not seek a final decision with respect to its claims under the 1989 Memphis contract. This argument is not supported by the record. Plaintiff sought a final decision of its claims under the 1989 Memphis contract by letter dated June 19, 1992. By letter dated June 30, 1992, defendant acknowledged, but did not act upon, plaintiff's request for a final decision on these claims.

**4.** Defendant makes much of the fact that the Fort Lauderdale contract was subject to a default termination. Defendant argues that a dispute over the termination of a contract is not equivalent to a dispute over a contract payment that gives rise to a CDA claim. Defendant is correct, but misses the point. Plaintiff requested a final decision regarding a sum certain allegedly due under the Fort Lauderdale contract, and the Bureau of Prisons ignored that request. The amount allegedly due under the contract therefore was in dispute. *See Dawco*, 930 F.2d at 879; *see also O'Keefe*, 986 F.2d at 485–86.

**5.** Defendant notes that the February 22, 1988 letter concerning the Fort Lauderdale contract contained a settlement offer of $24,000.00 and that the presence of this figure, together with the different amount described in the attached invoices, demonstrates that plaintiff did not satisfy the CDA requirement that a claim specify a sum certain. There is a material distinction, however, between an amount that a claimant is willing to accept through settlement and an amount due under a contract. A settlement offer cannot be the subject of a CDA claim. It is the amount due under the contract that represents the sum certain.

deprive a court ... of jurisdiction over a claim...." 41 U.S.C. § 605(c)(6) (Supp. IV 1992).

Defendant points to *Santa Fe Engineers, Inc. v. Garrett,* 991 F.2d 1579, 1583 (Fed.Cir. 1993), for the proposition that the gap in time between the certification and the submission purportedly being certified makes it impossible to determine what the certification was intended to cover. In that case the certification was submitted long before the submissions comprising the putative claim. The court noted that plaintiff had, "over a period of two years, submitted additional supporting data as a part of its proposal and none of the additional data was ever certified." *Santa Fe,* 991 F.2d at 1583. Here, by contrast, the certifications of the Fort Lauderdale and 1985 Memphis claims occurred after, not before, requests for sums certain, and no basis for doubt was present as to what amounts were being certified.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss for lack of subject matter jurisdiction is granted with respect to counts 10 and 11 and is otherwise denied.

2. By August 18, 1995, the parties shall file a Joint Status Report proposing a discovery schedule with respect to the remaining counts of the complaint, *viz.,* counts 1–8 and 14.