**SANTA FE ENGINEERS, INC., Appellant,**

v.

**H. Lawrence GARRETT, III, Secretary of the Navy, Appellee.**

No. 92–1361.

United States Court of Appeals, Federal Circuit.

April 27, 1993.

Sally B. Pfund, Williams & Jensen, P.C., Washington, DC, argued for appellant. With her on the brief was Robert J. Martinez.

Donna C. Maizel, Attorney Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Deputy Director. Of counsel was Sharon Y. Eubanks.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and MAYER, Circuit Judge.

COWEN, Senior Circuit Judge.

The appellant (Santa Fe or Contractor) entered into a contract with the Navy for the construction of a facility for the retrieval of spent space shuttle rocket booster tubes at Port Hueneme, California. After completion of the contract, Santa Fe filed a claim for an equitable adjustment in an amount exceeding $50,000 with the contracting officer. Upon denial of the claim, the contractor appealed to the Armed Services Board of Contract Appeals (ASBCA), which held a hearing on the merits.

After the hearing had been completed, this court issued its decisions in *United States v. Grumman Aerospace Corp.*, 927 F.2d 575 (Fed.Cir.1991), and *Dawco Construction, Inc. v. United States*, 930 F.2d 872 (Fed.Cir.1991). The Board determined that these decisions raised a question regarding the Board's jurisdiction over the appeal. Therefore, instead of deciding the case on the merits, the Board issued an order requiring Santa Fe to show cause why the appeal should not be dismissed. Both parties were directed to comment on the effect of the two decisions on the Board's jurisdiction. After considering the parties' responses, the Board dismissed the appeal for lack of subject matter jurisdiction, without prejudice to Santa Fe's submittal of a properly certified claim to the contracting officer, ASBCA No. 36292, 92–2 BCA (CCH) ¶ 24795 (1992).

The Board held: (1) The claim submitted by the contractor to the contracting officer did not meet the requirements of a claim under the Contract Disputes Act (CDA), 41 U.S.C. § 605 (1988), as implemented by the Defense Acquisition Regulation, DAR 7–103.12, and as interpreted by *Dawco;* and (2) the contractor's vice president, who signed the certification, was not an appropriate certifying individual under the contract and the same regulation, as interpreted by *Grumman.*

For the reasons to be set forth, we affirm the Board's decision that Santa Fe's submissions did not constitute a claim under the CDA. Therefore, we need not decide whether Santa Fe's vice president was qualified to certify the claim.

## BACKGROUND

Although Santa Fe challenges the conclusions which the Board drew from its factual findings, there is little or no dispute as to the underlying, material facts. The claim which culminated in this appeal had its origin in the discovery by Santa Fe on June 14, 1984, of unsuitable soil conditions in the area where a ramp was to be constructed. The Navy issued a stop work notice for the ramp and sent Santa Fe a proposed change order (PCO 46), in which the Navy requested that Santa Fe submit a proposal for solving the unsuitable soil conditions in the ramp area. Santa Fe's first proposal for PCO 46 was a ballpark estimate, which was rejected and resulted in the Navy's cancellation of PCO 46 on August 7, 1984. On the same date, the Navy issued PCO 47, which proposed a deletion of the ramp.

On November 21, 1984, Santa Fe submitted a cost proposal in the amount of $265,942, based on the stop work notice and the related ramp problems. The proposal included a time extension request of 72 days. The letter stated that a certification of the proposal would be forthcoming. The Board found that the parties were not in dispute over the proposal at that time.

On December 11, 1984, a meeting was held among Mr. Stephen Riley, Santa Fe's vice president, and the Navy representatives to negotiate the changes relating to the deletion of the ramp. A bilateral agreement was reached by the parties granting the government credit in the amount of $14,115. The results of the meeting with respect to Santa Fe's cost proposal of November 21, 1984, were confirmed in a letter from the Navy to Santa Fe dated January 2, 1985, which read in part:

> A meeting was held on 11 Dec 84 with your Stephen Riley to discuss the ramp deletion change.... It was determined that more information and justification was needed before the government could properly evaluate your proposed costs.

The letter detailed the nature of the information which the Navy requested. The Board found that the parties were not in dispute over the cost proposal at that time.

Santa Fe responded to the Navy's letter of January 10, by its letter of February 6, 1985, stating that the Navy officials:

[M]ay well totally misunderstand the effect of stopping work, requesting proposals and canceling work and misguiding future directives. We therefore, find it necessary to consider our cost proposal in response to your PCO–46 a claim and shall certify it as such.

The letter was signed by Santa Fe's vice president and included a certification in compliance with the CDA. Santa Fe did not request a decision of the contracting officer at that time. On February 6, 1985, the same day that Santa Fe certified its cost proposal as a claim, Santa Fe wrote the Navy stating that Santa Fe would be providing additional data "to help the owner better understand the proposal."

By letter of April 16, 1985, Santa Fe wrote the Navy in part as follows: "You have requested previously additional costs associated with changes and delays at the Wharf Construction area. Your letter of January 2, 1985, acknowledged our claim but requested additional information." The letter enclosed certain data but did not request a decision of the contracting officer. Instead, Santa Fe requested that a meeting be held to continue negotiations. The letter also reduced Santa Fe's claim for time extensions from 72 to 57 calendar days.

Another meeting was held on September 24, 1985, following which Santa Fe provided the Navy with additional material in support of its proposal of November 21, 1984.

A year later on December 2, 1986, Santa Fe wrote the government stating in part: "Our claim to you for this time, as well as the direct costs, has been in to you and certified for some time. If you care to have another meeting on this matter prior to my requesting a final decision, please let me know within (10) days." The Navy replied by letter of March 17, 1987, stating

that it had found insufficient justification for a time extension associated with the ramp deletion and advised Santa Fe that if it disagreed, it should proceed in accordance with the Disputes clause of the contract.

Santa Fe replied on May 28, 1987, stating in part as follows: "Due to the length of time this claim has been before your office and in light of our previous certification, we at this time request the issuance of a written final decision from the Contracting Officer concerning this claim." Although more than two years had elapsed since February 6, 1985, when Santa Fe certified its proposal as a claim, Santa Fe did not attach a claim certification to its letter, and did not otherwise execute a new claim certification.

On September 29, 1988, the contracting officer issued his decision, denying Santa Fe's claim for direct costs in part and its claim for delayed costs in total.

The Board found that the parties were in dispute on May 28, 1987, when Santa Fe requested a decision of the contracting officer.

## DISCUSSION

### I.

█ In part, the Board's decision involved interpretations of DAR 7–103.12, which was incorporated in the contract as its Disputes clause. Such interpretations present questions of law which are subject to our *de novo* review. *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 997 (Fed.Cir.1991). However, the Board's findings of fact are binding on us if they are supported by substantial evidence.

### II.

The Disputes clause of the contract is the standard Disputes clause contained in DAR 7–103.12 and provided in pertinent part:
DISPUTES (1980 JUN)

. . . .

(b) Except as provided in the Act, all disputes arising under or relating to this

contract shall be resolved in accordance with this clause.

(c)(1) As used herein, "claim" means a written demand or assertion by one of the parties seeking, as a matter of right, the payment of money, adjustment, [sic] or interpretation of contract terms, or other relief, arising under or relating to this contract. However, a written demand by the Contractor seeking the payment of money in excess of $50,000 is not a claim until certified in accordance with (d) below.

(2) A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim for the purposes of the Act. However, where such submission if subsequently disputed either as to liability or amount or not acted upon in a reasonable time, it may be converted to a claim pursuant to the Act by complying with the submission and certification requirements of this clause.

(3) A claim by the Contractor shall be made in writing and submitted to the Contracting Officer for decision. A claim by the Government against the Contractor shall be subject to a decision by the Contracting Officer.

### III.

Santa Fe urges us to reverse the Board's decision on the ground that the contractor's letter of February 6, 1985, which identified its proposal of November 21, 1984 as a claim and attached a certification, was a claim which was then in dispute. We disagree. In *Dawco*, this court declared:

Clearly, the FAR mandates that, *inter alia*, a claim must seek payment of a sum certain as to which a dispute exists at the time of submission.

Similarly, the contract's disputes clause, containing the standard language mandated by the Defense Acquisition Regulations states that a "request for payment that is not in dispute when submitted is not a claim for purposes of the Act." The language is not ambiguous,

and means what it says: A contractor and the government contracting agency must already be *in dispute* over the amount requested. Unilateral cost proposals or correspondence suggesting disagreement during negotiations, while they may ultimately lead to a dispute, do not, for purposes of the Act, satisfy the clear requirement that the request be in dispute.

930 F.2d at 878. The quoted statement envisions a situation which was duplicated at the conference of December 11, 1984. The Navy's letter of January 2, 1985, summarizing the results of that conference, is persuasive evidence that Santa Fe's proposal was not in dispute at that time. The representatives of the Navy did not deny Santa Fe's right to compensation for any part of the amount set forth in the proposal. Instead, the letter shows that the Navy had no basis to determine whether it would dispute Santa Fe's claim, because Santa Fe had not presented the information needed by the Navy to evaluate Santa Fe's entitlement to the proposed costs.

In *Essex Electro Engineers, Inc. v. United States*, 22 Cl.Ct. 757, 765 (1991), *aff'd*, 960 F.2d 1576 (Fed.Cir.1992), the court in considering the application of *Dawco* to the facts before it, observed:

The court concludes from *Dawco* that the parties must have reached something approaching impasse on some of the elements of the contractor's demand before a claim can arise.

The events which followed Santa Fe's letter of February 6, 1985, demonstrate that the parties had not reached an impasse at that time. On February 6, 1985, the same day it certified its proposal, Santa Fe wrote the Navy that it would be providing additional data "to help the owner better understand the proposal." By letter of April 16, 1985, Santa Fe responded to the Navy's request of January 2, 1985, by submitting additional cost data. The letter also authorized a reduction in Santa Fe's request for a time extension from 72 to 57

days and asked the Navy to schedule another meeting to conduct negotiations.

As shown by the facts recited in the background section of this opinion, the parties met several times during the next two years and Santa Fe continued to furnish more supporting data to the Navy. However, the negotiations terminated on March 17, 1987, when the Navy notified Santa Fe that it had found insufficient justification for Santa Fe's requested time extension. Santa Fe responded by letter of May 28, 1987, in which for the first time, Santa Fe requested a "final written decision from the contracting officer concerning this claim."

## IV.

■ As previously stated, the Board found that the parties were in dispute when Santa Fe wrote the letter of May 28, 1987. However, Santa Fe did not execute a certification to that letter. The Board held that although the letter referred to Santa Fe's previous certification of February 6, 1985, that certification was not effective at the time it was submitted because it did not relate to an existing dispute. Santa Fe's alternative position on this issue is that its letter of May 28, 1987, effectively converted Santa Fe's proposal into a claim. We hold that the Board's decision is correct as a matter of law. Our predecessor court in *W.H. Moseley Co. v. United States*, 230 Ct.Cl. 405, 677 F.2d 850, 852 (1982), stated:

> Because of the significant role certification plays in the statutory scheme, we hold that to properly certify a claim a contractor must make a statement which simultaneously makes all the assertions required by 41 U.S.C. § 605(c)(1).

*Moseley* was followed in *Arlington Alliance, Ltd. v. United States*, 231 Ct.Cl. 347, 685 F.2d 1353, 1360 (1982), and cited with approval in *Skelly & Loy v. United States*, 231 Ct.Cl. 370, 685 F.2d 414, 416 (1982). The reason for the rule was well articulated in *Oman–Fischbach, International (Joint Venture)*, ASBCA No. 41474, 91–2 BCA ¶ 24,018 at 120,269, 1991 WL 100546, upon which the Board relied in this case:

> The three elements of the certification are all couched in the present tense, not

the future or the subjunctive. *See* 41 U.S.C. § 605(c)(1). Plainly, a contracting officer can have little assurance that a claim submitted thirteen months after certifying continues to be "made in good faith," that the supporting data still "are accurate and complete," and that "the amount requested accurately reflects" what is believed to be due.

As the Board noted in its opinion in this case, Santa Fe had, over a period of two years, submitted additional supporting data as a part of its proposal and none of the additional data was ever certified.

## V.

The authority most heavily relied upon by Santa Fe is this court's decision in *Transamerica Insurance Corp. v. United States*, 973 F.2d 1572 (Fed.Cir.1992), wherein the court held that after a disputed, properly certified claim had been submitted to the contracting officer, the efforts of the contractor thereafter to negotiate a settlement of the claim did not invalidate it. Santa Fe claims that *Transamerica* is on all fours with this case, but *Transamerica* is clearly distinguishable. The government in *Transamerica* did not argue that the contractor's claim was not "in dispute," but contended that the claim was vitiated by the fact that the contractor attempted to settle it after it had been submitted to the contracting officer.

In *Transamerica*, the contractor notified the authorized representative of the contracting officer that a serious discrepancy had been discovered in the plans and specifications for a roof to be constructed. The contractor stated that the discrepancy would require additional material, labor and time, and that work on the roof had been stopped until directions were given on how the contractor should proceed. The contracting officer's representative responded that because the contractor had not complied with his contractual obli-

gations to examine and report any discrepancies or omissions in the plans and specifications, he was responsible for any errors which might have been avoided if the contractor had complied with the provisions of the contract. Accordingly, the contracting officer's representative directed the contractor to submit a plan for correcting the situation. The contractor replied that the error was the responsibility of the government, that the directive for the contractor to proceed with the correction of the error was a constructive change in the contract, and that the contractor reserved all rights to claim an equitable adjustment. Thereafter, on September 1, 1988, the contractor submitted to the contracting officer a properly certified claim for an equitable adjustment. *Transamerica*, 973 F.2d at 1574–75.

After reviewing the evidence, the court found that the contractor's letter of September 1, 1988, was a claim which complied with the CDA. Further, the court adopted a three step "common sense analysis" to determine whether a "claim" meets the requirements set forth by the CDA. *Id.* at 1579. Included in the "common sense analysis" is a determination of whether the government disputed the contractor's right to recover the amount asserted in its claim. Based on the foregoing, we conclude that *Transamerica* does not support Santa Fe's position, because unlike the facts in this case, there was conclusive proof that the contractor's claim of September 1, 1988, was in dispute when it was submitted to the contracting officer. The government did not attempt to controvert that proof.

### VI.

■ Relying on the Supreme Court's decision in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), Santa Fe argues that the Board committed reversible error by the retroactive application of our decision in *Dawco*, which was a jurisdictional ruling. Adherence to recent decisions of the Supreme Court requires us to disagree with this argument. In *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981), the Supreme Court held:

> A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only.

Although we think that ruling is dispositive of the question, the recent decision of the Supreme Court in *James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), provides another reason for our rejection of Santa Fe's contention. The Court considered whether in light of *Chevron*, it is error for a court to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. The Court answered the question in the affirmative and in concluding its opinion, stated:

> The grounds for our decision today are narrow. They are confined entirely to an issue of choice of law: when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or *res judicata*.

*Id.* at —, 111 S.Ct. at 2448. Without question, that holding applies in this case, because our decision in *Mayfair Construction Co. v. United States*, 841 F.2d 1576 (Fed.Cir.), *cert. denied*, 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988), is a prior decision of this court which upheld the requirement of the Disputes clause of the contract that a dispute precede the filing of a claim. In that case, Mayfair argued that the CDA does not require a claim to be disputed and that the terms of the Disputes clause requiring a dispute violate the statute. This court held that Mayfair's argument was without merit.

## CONCLUSION

From a study of the whole record, and in accordance with our standard of review, we conclude that the findings of the Board are supported by substantial evidence, and that its rulings on the legal questions presented in this case are not contrary to law. Accordingly, the decision of the Board is

*AFFIRMED.*[1]

---

1. As noted in the introduction to this opinion, the Board dismissed the appeal for lack of subject matter jurisdiction, without prejudice to Santa Fe's submission of a properly certified claim to the contracting officer. *See Skelly & Loy v. United States,* 231 Ct.Cl. 370, 685 F.2d 414, 419 (1982). If Santa Fe had prevailed in this appeal, we would have reversed the Board's decision and remanded the case for the Board's decision on the merits, based on the record of the hearing previously held by the Board.