**D.L. BRAUGHLER COMPANY, INC., Appellant,**

v.

**Togo D. WEST, Secretary of the Army, Appellee.**

**No. 96–1277.**

United States Court of Appeals, Federal Circuit.

Oct. 27, 1997.

Adrian L. Bastianelli, III, Bastianelli, Brown, Touhey & Kelley, Chtd., Washington, DC, argued, for appellant. With him on brief was Lori Ann Lange.

Steven E. Gordon, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for appellee. With him on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director.

Before NEWMAN, CLEVENGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

D.L. Braughler Company, Inc. ("Braughler") appeals from the November 28, 1995 decision of the Corps of Engineers Board of Contract Appeals ("Board") dismissing as untimely Braughler's appeal of a contracting officer's final decision. *D.L. Braughler Co.,* ENGBCA No. 6121, 96–1 BCA 28,110 (1995). We affirm.

## BACKGROUND

On April 16, 1982, Braughler and the United States Army Corps of Engineers ("Corps") entered into a contract for remedial work at the R.D. Bailey Dam, Guyandot River, West Virginia. *Braughler,* 96–1 BCA at 140,310. In addition to its specific provisions, the contract contained various standard clauses from the Defense Acquisition Regulations ("DAR").[1]

---

1. The contract was executed before the Federal Acquisition Regulations ("FAR") were promulgated.

During contract performance, a dispute arose, in which Braughler asserted that the Corps had unreasonably delayed approving its cofferdam shop drawings. *Id.* In response to Braughler's request for an extension of the contract completion date, the Corps issued Modification P00013. *Id.* at 140,310–11. The modification extended the contract completion date by 180 days. *Id.* Braughler executed the modification but reserved the right to file a claim for compensable delay costs. *Braughler,* 96–1 BCA at 140,311.

On February 10, 1988, Braughler sent a letter to the Corps' resident engineer for the project. The letter bore the subject title "Claim for Delay Caused by Untimely Approval of the Existing Stilling Basin Cofferdam." *Id.* In the letter, Braughler stated that it was seeking $137,648.04 in compensable delay costs, as well as additional delay time. *Id.* Accompanying the letter were eighteen separate exhibits containing supporting data for the claim. In addition, Braughler informed the resident engineer that its books and records were available for review. In the final paragraph of the letter, Braughler stated that "Attached as Exhibit 19 is our Certification of our claim." The certification read:

> I, David L. Braughler, certify that the claim submitted by our letter dated 10 February 1988 and its attachments for the Delay Caused by Untimely Approval of the Existing Stilling Basin Cofferdam in the amount of $137,648.04 is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief, and the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

The resident engineer was designated as the authorized representative of the contracting officer. In that capacity, he had authority to "take any or all actions in connection with contract administration which could be lawfully taken by [the contracting officer], except the execution of or agreement to any contract modification."

On February 16 and August 19, 1989, Braughler contacted the resident engineer in order to inquire about the status of the claim. Eventually, on February 22, 1990, representatives of Braughler met with the resident engineer to discuss the claim. *Braughler,* 96–1 BCA at 140,311. The parties were unable to reach agreement, however, and by letter dated March 14, 1990, the resident engineer wrote Braughler concerning the claim. *Id.* In his letter, the resident engineer stated: "I find that your claim is not justifiable. The provisions for obtaining a Contracting Officer's Decision are contained in General Provision 6, 'Disputes' of the contract." *Id.*

By letter dated April 3, 1990, Braughler contacted the contracting officer concerning its claim. *Id.* The letter read:

> This letter is written with regard to our claim for Untimely Approval of the Existing Stilling Basin Cofferdam, which was submitted by our letter of 10 February 1988. By letter dated 14 March 1990, [the resident engineer] denied the claim. We believe his decision is incorrect and · request that a final decision be issued on the claim. However, prior to issuance of a final decision, we would like to have the opportunity to meet with you and try to resolve the claim short of litigation. Please let us know if you are willing to meet with us and if so please set an acceptable date for the meeting.

Braughler did not provide a new claim certification with its April 3rd letter. *Braughler,* 96–1 BCA at 140,311. After further correspondence and a meeting between the parties, in a final decision dated November 16, 1990, the contracting officer denied Braughler's claim. *Id.* at 140,311–12. The final decision opened with the following paragraph:

> By letter dated February 10, 1988, you submitted a certified claim to the Resident Engineer in the amount of $137,648.04 for additional costs allegedly resulting from a delay caused by untimely approval of your cofferdam proposal (shop drawings). By

letter dated March 14, 1990, the Resident Engineer responded by stating that the claim was not justified and referred you to the Contracting Officer for a Contracting Officer's final decision. By letter dated April 3, 1990, you requested a Contracting Officer decision on your claim and a meeting with me prior to issuance of the decision.

*Id.* at 140,312 (citations omitted).

The contracting officer advised Braughler that it could appeal the final decision to the Board within ninety days or within twelve months could bring an action in the United States Claims Court, the predecessor of the Court of Federal Claims. Braughler did not pursue either of these avenues. *Id.*

On October 30, 1992, the Corps informed Braughler that it wanted to close out the contract because the time for appealing the final decision had expired. *Braughler,* 96–1 BCA at 140,312. By letter dated November 30, 1992, Braughler responded that its "submittal of February 10, 1988 did not constitute a 'claim' under the Contract Disputes Act, and therefore the Contracting Officer's final decision of November 28[sic], 1990 was not valid." Braughler requested that the contracting officer issue a final decision, and it submitted a new claim certification dated December 7, 1992 with the letter. *Braughler,* 96–1 BCA at 140,312. The certification recited as follows:

> I, David L. Braughler, certify that the claim submitted by our letter dated 10 February 1988 and its attachments for the Delay Caused by Untimely Approval of the Existing Stilling Basin Cofferdam in the amount of $137,648.04 is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief, and the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

*Id.* No other materials were enclosed with the letter. *Id.*

The contracting officer did not issue a final decision. *Id.* Subsequently, on January 18, 1994, pursuant to section 605(c)(5) of the Contract Disputes Act ("CDA"), 41 U.S.C. § 605(c)(5) (1988), Braughler appealed the deemed-denial of its claim to the Board. *Braughler,* 96–1 BCA at 140,312. In due course, the Corps filed a motion to dismiss, arguing that the Board lacked jurisdiction because the appeal was untimely. *Id.* at 140,309. The Board granted the motion in its November 28, 1995 decision. *Id.* at 140,-312. The Board determined that Braughler had failed to timely appeal the contracting officer's November 16, 1990 final decision, and that therefore jurisdiction was lacking. *Id.* at 140,313. Regarding Braughler's argument that it had not requested a final decision in its February 10, 1988 letter to the resident engineer, the Board stated that it could "only wonder why [Braughler] certified the claim if it did not intend to present a CDA claim at that time." *Braughler,* 96–1 BCA at 140,313. The Board further stated that "it offends logic if [Braughler's] specific request for a [contracting officer's decision] following its certified claim did not establish a CDA claim." *Id.* Braughler's appeal to this court followed.

## DISCUSSION

### I.

Pursuant to the CDA, 41 U.S.C. §§ 601–613 (1994),[2] we review decisions of the Board under the following standard:

> the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b). We have stated that "[w]hether a motion to dismiss for lack of

2. Where appropriate, we indicate differences between the present version of the CDA and the version that was in effect during the period of time relevant to this case.

jurisdiction has been properly granted is a question of law subject to complete and independent review on appeal." *Gould, Inc. v. United States,* 67 F.3d 925, 928 (Fed.Cir. 1995); *see also Arnold M. Diamond, Inc. v. Dalton,* 25 F.3d 1006, 1010 (Fed.Cir.1994) (noting that the issue of whether the Board has jurisdiction is a question of law, which we review *de novo* ).

## II.

■ Under the CDA, "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). "[A] final decision by a [contracting officer] on a 'claim' is a prerequisite for Board jurisdiction." *Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1575 (Fed.Cir.1995) (in banc). Following receipt of a contracting officer's final decision, a contractor has ninety days to appeal the decision to the appropriate agency board of contract appeals. 41 U.S.C. § 606.[3] If a timely appeal is not lodged, the contracting officer's decision on the claim "shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency." 41 U.S.C. § 605(b). If no appeal to the Board is taken within the ninety day statutory period set forth in section 606, the Board has no jurisdiction to hear the claim. *Cosmic Constr. Co. v. United States,* 697 F.2d 1389, 1390 (Fed.Cir.1982).

The CDA does not define the term "claim." However, Braughler's contract with the Corps contained the standard disputes clause of DAR § 7–103.12. That clause defined "claim" in pertinent part as "a written de-

mand or assertion by one of the parties seeking, as a matter of right, the payment of money, adjustment, or interpretation of contract terms, or other relief, arising under or relating to this contract." DAR 7–103.12(c)(1).[4] The three basic requirements for a "claim" are: (i) a written demand, (ii) seeking, as a matter of right, (iii) the payment of money in a sum certain. *Reflectone,* 60 F.3d at 1575.

■■ During the relevant period of time, for claims in excess of $50,000, the CDA imposed the additional requirement that the contractor "certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." 41 U.S.C. § 605(c)(1) (1988).[5] Proper certification requires that "a contractor must make a statement which simultaneously makes all of the assertions required by 41 U.S.C. § 605(c)(1)." *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 677 F.2d 850, 852 (1982); *see also Santa Fe Eng'rs, Inc. v. Garrett,* 991 F.2d 1579, 1583 (Fed.Cir.1993), *overruled on other grounds, Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed.Cir.1995) (in banc). If a contractor's submission fails to meet all of the above requirements, it is not a "claim," and the contracting officer has no authority to issue a final decision on the submission. *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1384 (Fed.Cir.1983). As a result, any subsequent proceedings on the submission have no legal significance. *See Skelly & Loy v. United States,* 231 Ct.

---

3. Pursuant to 41 U.S.C. § 609(a)(1), as an alternative to appealing to the agency board of contract appeals, the contractor may file suit in the United States Court of Federal Claims. Any such action must be filed within twelve months from the date of receipt of the contracting officer's final decision. 41 U.S.C. § 609(a)(3).

4. The relevant FAR provision, 48 C.F.R. § 33.201, addressed by the court in *Reflectone,* defines "claim" in a similar manner.

5. The current version of section 605(c)(1), 41 U.S.C. § 605(c)(1) (1994), imposes an additional requirement along with those required by the 1988 version. That additional requirement is that the contractor certify "that the certifier is duly authorized to certify the claim on behalf of the contractor." *Id.* In addition, the threshold for invoking the certification requirement has been raised to $100,000. *Id.*

Cl. 370, 685 F.2d 414, 419 (1982).[6]

Braughler contends (i) that the February 10, 1988 letter to the resident engineer was not "submitted" to the contracting officer for decision as required by 41 U.S.C. § 605(a), and (ii) that when it did submit a claim to the contracting officer on April 3, 1990, the certification was defective because it was not executed contemporaneously with the claim. As a result, Braughler argues, the contracting officer was not authorized to issue a final decision. Consequently, his decision of November 16, 1990 was a legal nullity. As such, it could not start the running of the limitations period.

## A.

■ Turning to Braughler's first argument, we have described the "submit" language of section 605(a) as "merely a requirement that once a claim is made, the parties must 'commit' the claim to the contracting officer and 'yield' to his authority to make a final decision." *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 880 (Fed.Cir.1991), *overruled on other grounds, Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir.1995) (in banc). Furthermore, we have stated that:

> [t]he plain language of § 605 requires claims against the Government to be submitted to the contracting officer. It does not, however, require that the claims be sent only to the contracting officer, or necessarily directly to that officer.... If ... the contractor sends a proper claim to its primary contact with a request for a final decision of *the contracting officer* and a reasonable expectation that such a request will be honored, and the primary contact in fact timely delivers the claim to the contracting officer, then we see no basis for finding that the claim was not submitted to the contracting officer as required under § 605(a).

*Neal & Co. v. United States*, 945 F.2d 385, 388–89 (Fed.Cir.1991) (footnote omitted).

Braughler argues that its February 10, 1988 letter was not submitted to the contracting officer for a final decision. It notes that the letter was sent to the resident engineer without a request that it be forwarded to the contracting officer and that the letter did not request a final decision. It also notes that the letter indicated that Braughler's books and records were available for review by the resident engineer and that Braughler would provide the resident engineer with any further information he needed. Furthermore, Braughler points out, during the two-year period following submission of the letter, Braughler communicated only with the resident engineer concerning the claim. In addition, Braughler points to the resident engineer's March 14, 1990 letter, in which he stated that he found Braughler's claim "not justifiable" and in which he informed Braughler that "provisions for obtaining a Contracting Officer's decision are contained in General Provision 6, 'Disputes' of the contract." Braughler maintains that this letter makes it clear that the February 10, 1988 letter was not submitted to the contracting officer for a final decision.

We agree with Braughler on this point. The "submit" requirement of section 605(a) would have been satisfied if the resident engineer had received Braughler's claim and, if so requested by Braughler, had passed it on to the contracting officer for a final decision. *See Neal & Co.*, 945 F.2d at 388–89 (stating that if "the contractor sends a proper claim to its primary contact with a request for a final decision of *the contracting officer* and a reasonable expectation that such a request will be honored, and the primary contact in fact timely delivers the claim to the contracting officer, then we see no basis for finding that the claim was not submitted to the contracting officer as required under § 605(a)"). Although Braughler's February 10, 1988 letter was sent to an authorized representative of the contracting officer, the letter gave no indication that Braughler was

**6.** The CDA currently provides that a defective certification "shall not deprive a court or an agency board of contract appeals of jurisdiction over the claim," though the court or agency board must require that the defective certification be corrected before entry of final judgment. 41 U.S.C. § 605(c)(6) (1994).

seeking a final decision from the contracting officer, and the letter was not forwarded to the contracting officer.[7] Moreover, Braughler sought to resolve the matter with the resident engineer. Under these circumstances, the February 10, 1988 letter did not qualify as a claim "submitted to the contracting officer for a decision" under section 605(a).

### B.

■ Braughler argues next that its April 3, 1990 letter to the contracting officer failed to qualify as a claim submission because it was not accompanied by a contemporaneous certification. Rather, the letter simply referred to "our claim for Untimely Approval of the Existing Stilling Basin Cofferdam, which was submitted by our letter of 10 February 1988." Braughler asserts that "[a] contractor's letter to the contracting officer requesting a final decision based on a previous outdated certification is not sufficient to meet the CDA requirements even if there is no change in the claim." In making this argument, Braughler quotes the following statement in *Santa Fe Engineers:*

> The three elements of the certification are all couched in the present tense, not the future or the subjunctive. *See* 41 U.S.C. § 605(c)(1). Plainly, a contracting officer can have little assurance that a claim submitted thirteen months after certifying continues to be "made in good faith," that the supporting data still "are accurate and complete," and that "the amount requested accurately reflects" what is believed to be due.

*Santa Fe Eng'rs,* 991 F.2d at 1583 (quoting *Oman–Fischbach, Int'l,* ASBCA No. 41474, 91–2 BCA 24,018 at 120,269 (1991)). Braughler notes that in this case, the certification was provided on February 10, 1988, but no claim was submitted to the contracting offi-

cer until April 3, 1990, some twenty-six months later.

In *Santa Fe Engineers,* a government contractor ("Santa Fe") encountered unstable soil conditions in an area in which it was doing construction work for the Navy. *Santa Fe Eng'rs,* 991 F.2d at 1580. As a result, the parties entered into negotiations for a change order. *Id.* On February 6, 1985, Santa Fe sent a letter to the Navy in which it identified a change order proposal submitted on November 21, 1984 as a claim. *Id.* The February 6 letter included a certification in compliance with the requirements of the CDA. *Id.* After the February 6 letter was sent, Santa Fe provided additional supporting data for its claim. *Santa Fe Eng'rs,* 991 F.2d at 1580. Eventually, by letter dated May 28, 1987, Santa Fe informed the Navy that it was seeking a final decision from the contracting officer on its claim. *Id.* However, no new certification was provided. *Id.* In due course, the contracting officer denied the claim and Santa Fe appealed to the Board. *Id.* The Board, however, dismissed the appeal for lack of jurisdiction. *Santa Fe Eng'rs,* 991 F.2d at 1583. It did so because Santa Fe had not executed a certification with its letter of May 27, 1987. *Id.* The Board held that although the May 27 letter referred to Santa Fe's certification of February 6, 1985, that certification was not effective at the time it was submitted because it did not relate to an existing dispute between the parties. *Id.*

Santa Fe appealed the Board's dismissal, and we affirmed. Addressing first Santa Fe's letter of February 6, 1985, which was accompanied by a certification, we concluded that the letter did not meet the requirements for a claim under the CDA. We did so based upon the determination that, at the time the letter was written, Santa Fe and the Navy "had not reached an impasse" over the issue of the change order for the unstable soil

**7.** The Corps argues that, after the February 10 letter was received by the resident engineer, through standard operating procedures, the letter was forwarded to the contracting officer. However, the Board made no finding that the contracting officer received the February 10 letter at any time before Braughler contacted the contracting officer by letter dated April 3, 1990, and we decline to make any such finding.

conditions. *Id.* at 1582–83. Because there was no dispute between the parties at the time the letter was written, there could be no claim under the CDA.[8] *Santa Fe Eng'rs,* 991 F.2d at 1583. We turned next to Santa Fe's contention that the May 28, 1987 letter, along with the certification sent with the February 6, 1985 letter, converted the 1984 change order proposal into a claim. Rejecting this argument, we concluded that no claim arose because the February 6, 1985 certification, executed over two years prior to the May 27, 1987 letter, could not be considered a certification with respect to supporting data that was submitted after it was made. *Id.* We stated that "Santa Fe had, over a period of two years, submitted additional supporting data as a part of its proposal and none of the additional data was ever certified." *Id.*

The present case differs from *Santa Fe Engineers.* There, after making its claim submission, the contractor submitted additional supporting data for which it provided no certification, thus violating the requirement that "to properly certify a claim a contractor must make a statement which simultaneously makes all the assertions required by 41 U.S.C. § 605(c)(1)." *W.H. Moseley,* 677 F.2d at 852. Here, Braughler's February 10, 1988 letter referenced all of the supporting data upon which Braughler was relying, and it contained a certification that simultaneously spoke to all three requirements of section 605(c)(1) (that the claim is

made in good faith, that the supporting data is accurate and complete, and that the amount requested accurately reflects what the contractor believes is due). Subsequently, during the period between February 10, 1988 and Braughler's April 3, 1990 letter to the contracting officer, the claim was not altered.[9] In addition, the April 3, 1990 letter did not refer to any new supporting data. Braughler's April 3, 1990 letter merely referred to the February 10, 1988 claim submission to the resident engineer and requested that the contracting officer issue a decision based upon that submission.

On February 10, 1988, Braughler submitted a claim with a proper certification to an authorized representative of the contracting officer, but did not request a final decision from the contracting officer. Thereafter, the identical claim submission and the identical supporting data were presented to the contracting officer when Braughler sought a final decision on April 3, 1990. We hold that, under these circumstances, no new certification was required. As a result, the contracting officer was authorized to issue a final decision on Braughler's claim, and his November 16, 1990 final decision therefore was valid. Because Braughler never appealed the final decision, pursuant to 41 U.S.C. § 605(b), it became final and conclusive and no longer reviewable. Therefore, the Board lacked jurisdiction to hear Braughler's appeal of January 18, 1994.[10]

8. The dispute requirement grew out of the definition of "claim" found in FAR § 33.201, which states that a "claim" is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim." 48 C.F.R. § 33.201 (1996). Under the dispute requirement, known as the "pre-existing dispute" rule, in order for a CDA claim to arise, a request for payment had to be in dispute at the time the written demand or assertion was submitted to the contracting officer. *See Dawco Constr.,* 930 F.2d at 878. We overruled *Dawco*'s pre-existing dispute rule in *Reflectone,* where we held that the "FAR 33.201 definition of 'claim' does not require a pre-existing

dispute *unless* the submission is a 'routine request for payment.' " 60 F.3d at 1579.

9. That the claim remained the same is also evidenced by the fact that when Braughler contacted the contracting officer by letter dated November 30, 1992 to argue that its February 10, 1988 letter did not meet all the CDA requirements for a claim, it referred to its February 10, 1988 letter as setting forth the substantive content of its claim.

10. As noted above, in *Santa Fe Engineers,* we quoted with approval the statement by the Board in *Oman–Fischbach, International (Joint Venture),* that "a contracting officer can have little assurance that a claim submitted thirteen months after certifying continues to be 'made in good faith,' that the supporting data still 'are accurate and complete,' and that 'the amount

## CONCLUSION

For the foregoing reasons, the decision of the Board that it lacked jurisdiction to hear Braughler's January 18, 1994 appeal is affirmed.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*

requested accurately reflects' what is believed to be due." *Oman–Fischbach*, 91–2 BCA 24,018 at 120,269. In *Oman–Fischbach*, the contractor, on November 14, 1988, submitted a letter and claim certification to the contracting officer. Thereafter, on December 19, 1989, the contractor wrote the contracting officer requesting a final decision on the claim submitted in November of 1988. The contracting officer declined to issue a decision, however, taking the position that the contractor had failed to submit a properly certified claim. Oman–Fischbach appealed to the Board on a deemed-denial basis. The Board dismissed for lack of jurisdiction because of failure to certify. In so doing, it rejected the argument that a properly certified claim was submitted in November of 1988—on the ground that, at that time, a dispute did not exist between the parties. The Board also rejected the argument that the December 1989 letter, which was not accompanied by a certification, represented a properly certified claim. It was in that context that the Board made the statement which we quoted in *Santa Fe Engineers*. Significantly, in *Oman–Fischbach*, the only certification that was made, the November 1988 certification, was made with respect to a submission that, under the law as it then stood, could not form the basis for a claim because there was no dispute between the parties. No such infirmity exists with respect to Braughler's February 1988 submission in this case. In any event, we decline to impose on a contractor who submits a properly certified claim to the contracting officer's authorized representative the requirement to recertify the claim, when the claim is later submitted to the contracting officer for a final decision after efforts to negotiate a settlement with the authorized representative have proved unsuccessful and when the contractor relies on no new supporting data for the claim.